**NICHOLAS ACOUSTICS & SPECIALTY COMPANY, et al., Plaintiffs-Appellees,**

v.

**H & M CONSTRUCTION COMPANY, INC. and Insurance Company of North America, Defendants-Appellants.**

Nos. 81–4489 to 81–4492.

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1983.

Christopher A. Shapley, Jackson, Miss., Lee J. Chase, III, Memphis, Tenn., for defendants-appellants.

Barry K. Cockrell, Jackson, Miss., for other interested parties.

Robert B. Sessums, Bobby B. DeLaughter, Jackson, Miss., for plaintiffs-appellees.

Before GOLDBERG, GEE and HIGGINBOTHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

These are four consolidated appeals from four related summary judgments against a general contractor in four actions in diversity by four subcontractors suing the general contractor for breach of their subcontracts. Though the results are not the same, the legal issues are identical and the factual circumstances are closely related, so we will treat all four cases together in this opinion.

## I. BACKGROUND

### A. Facts

Around October 9, 1978, Chef Pierre, Inc. entered into a construction contract with defendant-appellant H & M Construction Company ("H & M") to build a frozen dessert factory for Chef Pierre in Forest, Mississippi. Among other things, the construction contract provided that time was of the essence and included a schedule of completion times for various phases of the project and a schedule of liquidated damages for delays in completion of each phase. The contract further stated that Chef Pierre would make monthly progress payments of 90% of the compensation earned under the contract each month. The remaining 10% retainage would be paid upon completion of the project. Most important to this case, the contract also provided:

8. Upon completion by the CONTRACTOR of all work covered by the Contract and prior to final payment to the CONTRACTOR for the work performed, the CONTRACTOR shall deliver to the OWNER in the forms attached hereto: (a) releases of all liens and of rights to claim any liens, from all Subcontractors and material suppliers furnishing labor and/or materials for the project; and (b) an affidavit by the CONTRACTOR to the effect that payment has been made for all labor used on or for the construction of the project.

Supplemental Record at II–125.

During October and December, 1978, H & M entered into subcontracts with the four plaintiff-appellee subcontractors: Nicholas Acoustics & Specialty Co. ("Nicholas"), United Piping Systems, Inc. ("United"), South Central Heating & Plumbing Co. ("South Central"), and Niehaus, Inc. ("Niehaus").[1] Among other things, the subcontracts provided:

2. ORIGINAL CONTRACT: The terms, conditions, specifications, drawings, schedules and contract documents forming a part of the Original Contract between Contractor and the Owner are hereby made a part of this subcontract by reference as fully as if set out in detail. Subcontractor shall be bound to the same extent that Contractor is bound by each and every covenant, obligation and provision of said Original Contract insofar as the same is applicable to the work of Subcontractor.

\* \* \* \* \* \*

4. PROGRESS AND COMPLETION: Unless herein otherwise specially provided, Subcontractor shall commence work promptly or upon notice from Contractor. Subcontractor shall, in any event, prosecute the work diligently and so as to avoid delaying the progress of Contractor or other subcontractors on other portions of the project work. Subcontractor shall keep and maintain on the project a suffi-

cient number of properly qualified workmen and a sufficient quantity of materials, equipment and supplies to efficiently perform the work as required without delay. Should Subcontractor cause delay in the progress or completion of the project, the damages resulting therefrom, including liquidated damages assessed by Owner and attributable thereto, shall be the obligation of Subcontractor.

\* \* \* \* \* \*

5. PAYMENT: Subject to other provisions hereof, Contractor agrees to pay Subcontractor the stated consideration for said work on the basis of the quantities allowed and paid for by Owner, and to make payment within ten (10) days from the time that Contractor is paid by Owner, less ten (10) percentage retainage, which percentage may be retained until completion of the Original Contract and final payment by the Owner.

Record at 13–14.

The basic contract between Chef Pierre and H & M required H & M to procure a surety bond. On September 21, 1978, H & M executed such a bond with the Insurance Company of North America ("INA") as surety. The bond provided, in part, that:

2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials where furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of such suit.

---

1. The four subcontracts were identical save for the names of the subcontractors and details of the work subcontracted. Unless otherwise not-

ed, we shall refer to the record for Nicholas Acoustics, No. 81–4489.

Record at 9. Some of the provisions of this bond were necessary to satisfy the requirements of Miss.Code Ann. § 85–7–185.[2]

On January 23, 1981, Chef Pierre filed suit against H & M in a separate proceeding alleging that H & M had breached the construction contract in various ways, primarily claiming damages for delay. This litigation is still pending, and Chef Pierre has never made final payment to H & M of the ten percent retainage. Consequently, H & M has not paid the subcontractors their ten percent retainage.

### B. Proceedings Below

In April, May, and June, 1981, the four subcontractors filed claims against H & M and INA for the ten percent retainage not yet paid them. In all four actions H & M filed a third-party complaint against Chef Pierre, and Chef Pierre filed counterclaims against H & M. In June and July, 1981, these four actions were consolidated into the original action between Chef Pierre and H & M.

In November, 1981, the four subcontractors moved for summary judgment in each of their causes against H & M and INA. On November 18, 1981, the trial court entered final judgment in favor of all four subcontractors against H & M and INA, jointly and severally. These final judgments removed everything from the consolidated cases except the various claims between Chef Pierre and H & M.[3] The trial court concluded that paragraph five of the subcontracts, as a matter of law, allowed the contractor to delay final payment to the subcontractors only for a reasonable time after the subcontractors had completed their work. Finding that the subcontractors had completed their work and that a reasonable time had elapsed, the trial judge entered judgments in favor of the subcontractors. H & M and INA now appeal.

### C. Issues on Appeal

Summary judgment is proper given two conditions: (1) the moving party is entitled to judgment as a matter of law; and (2) there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). H & M and INA appeal on both conditions. First, they argue that by the very terms of the subcontract, final payment is not due to the subcontractors until final payment has been made by Chef Pierre to H & M. Thus, according to the appellants, nothing is yet due the subcontractors because Chef Pierre has not yet paid H & M. Second, appellants argue that the litigation pending between Chef Pierre and H & M raises issues of material fact as to whether these four subcontractors might owe some of the damages Chef Pierre alleges. We agree with the subcontractors that the clause of the subcontract allowing H & M to withhold final payment must be read as allowing withholding only for a reasona-

**2.** This section provides:
When any contractor or subcontractor entering into a formal contract with any person, firm or corporation, for the construction of any building or work or the doing of any repairs, shall enter into a bond with such person, firm or corporation guaranteeing the faithful performance of such contract and containing such provisions and penalties as the parties thereto may insert therein, such bond shall also be subject to the additional obligations that such contractor or subcontractor, shall promptly make payments to all persons furnishing labor or material under said contract; and in the event such bond does not contain any such provisions for the payment of the claims of persons furnishing labor or material under said contract, such bond shall nevertheless inure to the benefit of such person furnishing labor or material under said contract, the same as if such stipula-

tion had been incorporated in said bond, and any such person who has furnished labor or materials used therein; for which payment has not been made, shall have the right to intervene and be made a party to any action instituted on such bond, and to have his rights adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the rights or claim for damages or otherwise, of the obligee. The bond herein provided for may be made by any surety company authorized to do business in the State of Mississippi.
Miss.Code Ann. § 85–7–185 (1973).

**3.** The Findings of Fact and Conclusions of Law entered in favor of four subcontractors contained the findings required by Fed.R.Civ.P. 54(b) for the judgments to be appealable. *See, e.g.,* Record at 50.

ble time. Accordingly, the only factual issues are whether the subcontractors performed their subcontracts—whether any of the subcontractors caused any delay or inadequately performed.

We disagree with the appellants' argument that the ongoing litigation between Chef Pierre and H & M raises issues of fact with regard to all four subcontractors—more specific allegations are needed to counter the subcontractors' motion for summary judgment. We find that H & M's and INA's pleadings and briefs regarding South Central do raise a genuine disputed issue of material fact; our own review of the record further discloses a genuine issue of material fact with regard to Niehaus. We find no disputed issue of material fact with regard to Nicholas and United.

## II. CONSTRUCTION OF THE CONTRACT

In order to determine which facts are material, we must first address the legal issue of the construction of the contract and subcontracts. The subcontract provides in paragraph five that ten percent of the subcontract price "may be retained [by the contractor] until completion of the Original Contract and final payment by the Owner." Record at 14. H & M and INA argue that the plain language of the contract denies the subcontractors the present right to claim the retainage. The subcontractors make two arguments for not enforcing the plain language of the subcontracts. First, they argue that paragraph five conflicts with provisions of the main contract and so should not be read literally. Second, they argue that Mississippi state policy, as expressed by Miss.Code Ann. § 85–7–185, supplants clauses such as these. Because we agree that the contract and subcontracts taken together are internally contradictory, we need not address the subcontractors' policy arguments.

The two contradictory provisions are paragraph eight of the contract and paragraph five of the subcontract. Paragraph eight of the contract provides that the owner need not make final payment to the

contractor until all liens are released by the subcontractors and all subcontractors have been paid. But paragraph five of the subcontract provides that the subcontractors will not be paid in full until the owner has made final payment. This creates a classic "catch-22" situation—the owner will not pay until the subcontractors have been paid, and the subcontractors cannot be paid until the owner has paid.

Given this conflict, we must turn to general Mississippi contract law to resolve the contradiction. If one of two conflicting clauses in a contract seems dominant, that clause should be enforced. *Miller v. Magnolia Building & Loan Association,* 160 Miss. 367, 134 So. 136 (1931). Contracts should be construed so as to avoid unfair or unreasonable results. *Glantz Contracting Co. v. General Electric Co.,* 379 So.2d 912 (Miss.1980). Vague or ambiguous contractual terms are construed more strongly against the party drafting them. *Stampley v. Gilbert,* 332 So.2d 61 (Miss. 1976). With these basic principles in mind we must now reconcile the conflicting terms.

It appears to us that the clause in the main contract, conditioning the owner's final payment on release of liens and full payment of the subcontractors, is the dominant of the two conflicting clauses. Thus we must now provide a reading of paragraph five of the subcontract that is harmonious with paragraph eight of the contract. The reading that sounds most in harmony with the tenor of the subcontract is to read paragraph five of the subcontract as allowing the contractor to delay final payment to the subcontractor only for a reasonable time after the subcontractor completes its work. This resolves the discordance with paragraph eight of the contract and protects the contractor's primary interest of having a reasonable time after completion to determine whether the subcontractor has adequately performed its subcontract. Thus H & M must pay the subcontractors within a reasonable time after their completion.

## III. DISPUTED ISSUES OF MATERIAL FACTS

■ Given the legal framework provided by our construction of the subcontracts, we may now investigate whether the record reveals any disputed issues of material fact. Before reaching the actual facts of these four causes, we pause a moment to reiterate some basic principles regarding summary judgment. Summary judgment is, of course, Damoclean and lethal. It can serve as a quick sword untangling the Gordian knot of litigation. Though the sword will cut both ways, in favor of either defendant or plaintiff, it is perhaps a little duller on the plaintiff's edge. A plaintiff moving for summary judgment has a heavy burden of showing that no genuine issue of material fact exists and that the plaintiff is entitled to judgment as a matter of law. *Pitts v. Shell Oil Co.*, 463 F.2d 331 (5th Cir.1972). Though the plaintiff's edge may be a little dull, it can still cut, so when the moving plaintiff meets the initial burden of showing entitlement to summary judgment, the responding defendant is well advised to raise a shield. "[R]ule 56 requires that the opposing party be diligent in countering a motion for summary judgment, and mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Liberty Leasing Co. v. Hillsum Sales Corp.*, 380 F.2d 1013, 1051 (5th Cir.1967) (citations omitted).

[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e).

### A. The Subcontractors' Position

In support of their motions for summary judgment, all subcontractors except South Central provided affidavits setting out the facts entitling them to summary judgment. These affidavits specifically alleged that the subcontractors had all fully performed, and in particular stated:

7. Nicholas Acoustics commenced work promptly upon notice that the Chef Pierre facility had reached a point in its construction so as to allow Nicholas to perform its work. From that point forward, Nicholas Acoustics prosecuted its work diligently, and did not delay the progress of either H & M or any other subcontractors on other portions of the project work. Nicholas Acoustics kept on the project a sufficient number of properly-qualified workmen, and a sufficient quantity of materials, equipment and supplies to efficiently perform the work required of it without delay. At no time has H & M advised Nicholas Acoustics, either verbally or in writing, that Nicholas Acoustics was delaying the progress of the project; nor has Nicholas Acoustics ever been advised, either verbally or in writing, that it was delaying the progress of other subcontractors on the job.

Supp. Record at II–244. This quote is from Nicholas' affidavit, but the other two were substantially the same. All four subcontractors also relied on the various documents in the case, and in particular, on the September 15, 1981 deposition of Charles David Fite, executive vice-president of H & M.

In all four cases these motions established initially the right of the subcontractors to summary judgment. The burden then shifted to H & M and INA to show that the subcontractors should not be granted summary judgment.

### B. H & M's and INA's position

[6] Once the movant initially establishes by alleging particular facts that it is entitled to summary judgment as a matter of law, the burden shifts to the opposing party to show that summary judgment is not appropriate. The opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response. In light of our view of the subcontracts, this proposition means that H & M and INA must have in the record allegations of specific instances in which the subcontractors

breached their subcontracts, either through causing delay or inadequately performing their work.

H & M and INA, in response to the subcontractors' motions for summary judgment, advanced two theories that they claimed raised disputed facts making summary judgment inappropriate. First, they claimed the original litigation between H & M and Chef Pierre presented disputed issues of material fact. Second, they argued that all subcontractors finished their work after their contract called for them to finish. We are unpersuaded that either of these points raises disputed issues of material fact.

Appellants first argue that the litigation between Chef Pierre and H & M is intimately concerned with performance of the contract, and consequently with performance of the subcontracts. Basically, H & M and INA argue that we should just wait and see what turns up in the Chef Pierre-H & M case before deciding these summary judgment motions. That position is unacceptable; it is not essentially different from responding to a motion for summary judgment by arguing that if the motion were denied, factual issues might develop at trial. That argument is, of course, invalid. *Golden Oil Co. v. Exxon Co.*, 543 F.2d 548 (5th Cir.1976). Second, H & M and INA argue that all subcontractors finished work after the time specified. That argument misses the point, however. The subcontractors could not even *begin* until after the date they were supposed to have been finished because the project as a whole was behind schedule. *See, e.g.*, Brief of Nicholas at 18. The only relevant issue is whether any subcontractor caused any additional delay by not finishing its tasks within the allotted time. In examining this issue we must look not only to the appellants' briefs and pleadings, but also to our own review of the record.

**4.** This deposition also reveals other specific allegations that South Central did not adequately perform. *See* Supp. Record at II–426 to II–429.

**5.** Many contracts contain *force majeure* clauses exculpating an employer from liability for strike delays. We find no such clause in South Central's subcontract, but that does not pre-

## C. South Central

■ South Central presents a somewhat different case from the other three subcontractors because only with regard to South Central did appellants' efforts direct us to a genuine issue of material fact in the record. In their response to South Central's motion for summary judgment, H & M and INA specifically alleged that South Central caused delay because of an approximately thirty day strike. Supp. Record at II–339. This allegation is also supported by the September 15, 1981 deposition of Charles David Fite. Supp. Record at II–420.[4] Because South Central contractually agreed to keep a sufficient number of qualified workmen on the project so as not to cause delay, a contention that South Central was off the job for thirty days is specific enough and material enough to merit a trial.[5]

## D. Our Review of the Record

If our duty and the duty of the trial judge in passing on a motion for summary judgment were merely to review the arguments advanced by the parties in their pleadings and affidavits, our task would now be over. Based on the arguments of H & M and INA we would conclude that no disputed issues of material fact existed, save for the strike perhaps delaying South Central. Fifth Circuit precedent, however, is not clear as to whether we may now rest from our labors. Some Fifth Circuit cases suggest that a court passing on a motion for summary judgment must make an independent review of the record looking for disputed issues of material fact.

It is bootless to contend, as defendants did on oral argument that, although the deposition was filed in the record, it could properly be ignored by the judge in rul-

clude reading the contract as if one were present. We specifically deny any opinion on this issue and mention it only to indicate we do not view a strike delay as inexorably leading to a conclusion that South Central is liable. Such matters are best left to development at trial.

ing on the motion for summary judgment because plaintiff's counsel did not in some manner bring it directly to the judge's attention.... [Fed.R.Civ.P. 56(c)] does not distinguish between depositions merely filed and those singled out by counsel for special attention. Nor is this a case where the deposition that created the dispute was a needle in a paper haystack; the docket sheet shows that only five depositions were filed.

*Higgenbotham v. Ochsner Foundation Hospital,* 607 F.2d 653, 656–57 (5th Cir.1979) (footnote omitted). *See also Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410 (5th Cir.1980) ("We note that a court can only enter a summary judgment if *everything* in the record—pleadings, depositions, interrogatories, affidavits, etc.—demonstrates that no genuine issue of material fact exists.") (emphasis in original).[6]

Other Fifth Circuit cases suggest that "[a]bsent extraordinary circumstances, we should not reverse a grant of summary judgment based on the presence of a factual issue that was not in some way brought to the attention of the district court." *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1033 n. 7 (5th Cir.1982). *See also Franz Chemical Corp. v. Philadelphia Quartz Co.,* 594 F.2d 146, 150 (5th Cir.1979) ("It is almost axiomatic that any genuine issue of fact must somehow be shown to exist at the district court level.").[7]

 We attempt neither to choose between the two Fifth Circuit principles nor to reconcile them; in our consideration of this case, however, we did undertake to examine the rather small record and have read every word constituting the entire record coming to us on appeal. Having read it, we cannot ignore what we have found. "Appellate courts should not look the other way to ignore the existence of genuine issues of material facts...." *Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 498 (7th Cir. 1972). We do find evidence of a disputed material fact in regard to Niehaus. Apparently a hurricane caused delay in delivery of roof insulation, which delayed Niehaus in completing its subcontract. Supp. Record at II–395 to II–396. This arguably could constitute a breach of Niehaus' subcontractual obligation to provide sufficient material to avoid delay in completion. As in the case of South Central, we express no opinion on the merits of this point, but merely hold that it is of sufficient weight to deserve development at trial. Our review of the record shows no dispute of material fact regarding Nicholas or United, so the summary judgment in their favor is appropriate.[8]

We wish to emphasize most strongly that it is foolhardy for counsel to rely on a court to find disputed issues of material fact not highlighted by counsel's paperwork; a party that has suffered the consequences of summary judgment below has a definite and specific duty to point out the thwarting facts. In a case such as this one, with only one significant deposition, or *Higgenbotham* with only five, a court might possibly spot something not specifically mentioned by counsel. In a more typical case, however, practical constraints on the time of a judge make it impossible for the judge to examine a record of even moderate size

---

**6.** These two cases speak specifically of district courts, but in reviewing a decision on summary judgment, this Court applies the same legal standard as a district court. *Impossible Electronics Techniques v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1030 (5th Cir. 1982); *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981); *United States Steel Corp. v. Darby,* 516 F.2d 961, 963 (5th Cir.1975).

**7.** Neither the cited cases nor the case before us now deals with raising a distinct issue for the first time on appeal or introducing new materi-

al into the record on appeal, but rather with the failure of an opponent to summary judgment to point out to the district court support already in the record for the position that an issue is actually shown by the record to be in dispute.

**8.** In the case of United, the September 15, 1981 deposition of Charles David Fite reveals that to the best of his knowledge, United did not complete its work in a timely manner. Supp. Record at II–385. This, however, is not the kind of specific allegation required to defeat a motion for summary judgment.

with such·finitude as to be both exhaustive and exhausting. Judges are not ferrets!

## CONCLUSION

A party moving for summary judgment must show that there are no disputed issues of material fact and that the movant is entitled to judgment as a matter of law. Here, the four subcontractors have persuaded us that the internal contradictions of the contract and subcontract require us to read the subcontract as requiring full payment within a reasonable time after completion. Given that legal framework, the only material facts pertain to whether the subcontractors adequately performed their subcontracts. The subcontractors made a showing of performance sufficient to shift the burden to the appellants to dispute by specific allegations the subcontractors' performance. The appellants were able to raise a factual issue with regard to South Central's performance. The record raised a factual issue with regard to Niehaus' performance. Accordingly, summary judgment was not appropriate for those two subcontractors, and the judgments in their favor are reversed and the cases remanded. The record did not show any disputed issues of material fact with regard to Nicholas or United. Accordingly, the summary judgments in their favor are affirmed.

Nos. 81–4489, 81–4490 AFFIRMED.

Nos. 81–4491, 81–4492 REVERSED AND REMANDED.