Betty L. GEORGE, Plaintiff-Appellee Cross-Appellant,

v.

FARMERS ELECTRIC COOPERATIVE, INC., Defendant-Appellant Cross-Appellee.

No. 82-1293.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1983.

---

Lyne & Klein, Ron Edmondson, Dallas, Tex., for defendant-appellant cross-appellee.

Hicks, Gillespie & James, Hal K. Gillespie, Dallas, Tex., for plaintiff-appellee cross-appellant.

Before GARZA, RANDALL and GARWOOD, Circuit Judges.

GARZA, Circuit Judge:

Plaintiff-Appellee, Betty L. George, brought a Title VII action, alleging sex discrimination, against defendant-appellant, Farmers Electric Cooperative, Inc. (hereinafter Farmers). She sought injunctive relief, back pay, benefits, and attorneys' fees. After a bench trial, the district court entered judgment for Mrs. George and awarded her $16,000 in damages and $11,812.50 in attorneys' fees. The district court, how-

ever, denied Mrs. George's request for reinstatement.

In the early 1950's Farmers developed an anti-nepotism policy. The district court found that the reasons for the policy were business related and concluded that the anti-nepotism policy precluding the employment of relatives "is a reasonable classification which bears a fair and substantial relation to the objectives of the policy to eliminate possible employee conflicts." Neither party disagrees with this finding.

Betty George, formerly Betty Landrum, began working in the office at Farmers in September, 1971. John George began working as a service man for Farmers in October, 1964. Knowing Farmers had an anti-nepotism policy, Betty and John George were engaged on March 12, 1979. On March 20, 1979, the defendant adopted a written anti-nepotism policy which provides:

> [W]hen any two employees become "close relatives" [as defined in II(c) to include spouses] by marriage or otherwise, one of them will be required to terminate his/her employment with the Cooperative. The determination as to which employee shall terminate will be made by the affected employees.

Since Betty George had previously asked whether the anti-nepotism policy was written, on March 21 Glenda Haynes, Betty's immediate supervisor, provided her with a copy of the written policy.

Betty and John George were married on July 7, 1979. On July 14, 1979, Betty and John received a letter, addressed to both of them, from Joe Lytle, Farmers' general manager. A copy of the company's anti-nepotism policy was enclosed, and Lytle asked the Georges to advise his office "which employee will terminate by July 31, 1979." On July 31, Glenda Haynes called Betty into her office and asked Betty who had decided to terminate. Betty replied that neither she nor John had decided to terminate. Glenda Haynes told Betty that she would have to terminate Betty because she had been so instructed by Joe Lytle.

On August 1, 1979, Betty George went to Glenda Haynes' office and asked her for a letter of termination stating why she was terminated. Haynes typed a letter that said Betty was being terminated because of the anti-nepotism policy. When Haynes handed Betty the letter; Betty asked why she was the one chosen instead of John; Haynes replied that "Joe Lytle said that Johnny was head of the household." The district court found Joe Lytle terminated Betty George "because he believed the husband was always the head of the marital household." This finding of fact was the basis for the district court's conclusion that Betty George's termination "constituted impermissible discrimination under Title VII of the Civil Rights Act."

Betty George filed her EEOC charge on August 24, 1979. On September 7, 1979, the company revised the written anti-nepotism rule to include a tie-breaker in which seniority would be the first determinant; and in case of equal seniority, the higher paid employee would be retained. The district court found "the tie-breaker on seniority is neutral and does not effect a disparate impact on female employees." The trial court concluded, nevertheless, that "the second tie-breaker of salary has a disparate impact on female employees in this case." The district court's denial of reinstatement was based on its finding that Mrs. George was subject to discharge under the seniority based tie-breaker adopted in September.

At the time of her termination, Betty George earned $968.00 a month working for Farmers. Mrs. George remained unemployed until March 24, 1980, when she was hired for $723.00 a month. On August 1, 1980, her salary was raised to $1,005.00 a month.

■ Several issues are before us on appeal. Farmers first attacks the district court's finding that Mrs. George's termination "constituted impermissible discrimination under Title VII of the Civil Rights Act." The basis of this finding was Mr. Lytle's statement to the effect that Betty was chosen for termination because John George was the head of the household. In

essence, the district court interpreted this statement to mean that John was retained and Betty was terminated because John is a man and Betty is a woman. Findings of fact by the trial court shall not be set aside unless "clearly erroneous." Fed.R.Civ.P. 52(a). Under the clearly erroneous standard of review, a finding of fact can be set aside "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States General Electric Supply Co. v. Wiring, Inc.*, 646 F.2d 1037, 1041 (5th Cir.1981), *quoting, United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The trial court's interpretation of Mr. Lytle's statement was not clearly erroneous. Although Mr. Lytle's statement could have been interpreted in different ways, the district court's construction was certainly reasonable. Consequently, the trial court's conclusion that Farmers' action violated Title VII of the Civil Rights Act is affirmed.

▪ The district court also concluded that the salary portion of the tie-breaker adopted by Farmers in September had a disparate impact on female employees. This portion of the tie-breaker was never and could never be applied to Mrs. George. If the tie-breaker as a whole had been applied to Mrs. George, she would have been terminated under the first test—seniority; Mrs. George, therefore, could in no way show that she was injured by the salary portion of the tie-breaker. For a complaining party to have standing, in a constitutional sense, a "distinct and palpable injury" is required. *O'Hair v. White*, 675 F.2d 680, 686 (5th Cir.1982) (en banc). *See Doherty v. Rutgers School of Law-Newark*, 651 F.2d 893, 899 (3d Cir.1981). Since it was impossible for Mrs. George to show she suffered a "distinct and palpable injury" from the salary tie-breaker, she lacked standing to challenge its possible impact. The district court, therefore, improperly exercised its remedial power in addressing the appropriateness of this portion of the tie-

breaker. *O'Hair v. White, supra,* 675 F.2d at 686. The district court's conclusion that the salary portion of the tie-breaker had a disparate impact on females, therefore, must be vacated.[1]

▪ On cross-appeal Mrs. George asserts the district court erred in denying her reinstatement. The trial court justified this holding by finding that Mrs. George could have and would have been properly terminated under the seniority tie-breaker adopted in September. Betty George is correct in arguing that reinstatement should be granted in all but unusual cases. *Garza v. Brownsville Independent School District*, 700 F.2d 253, 255 (5th Cir.1983). Mrs. George was not correct, however, in contending that this is not an unusual case.

Three aspects of this case make it unique. First, as the district court found, Farmers' anti-nepotism policy, which prologuized the entire situation, is perfectly valid. *See Harper v. Trans World Airlines, Inc.*, 525 F.2d 409, 412 (8th Cir.1975). If reinstatement is ordered, Farmers will be directed to employ both John and Betty George in spite of a valid company policy to the contrary. Second, John and Betty George created the situation leading to Farmers' Title VII violation by defying company policy. Farmers' policy required John and Betty to decide who would terminate, and John and Betty refused to adhere to this policy. If the policy had been followed by the Georges, Farmers would not have violated Title VII. Third, if Mrs. George had not been terminated on July 31, 1979, she would have been terminated in September under the seniority portion of the tie-breaker adopted by Farmers' in good faith. In itself, this does not justify denial of reinstatement. *Garza v. Brownsville Independent School District, supra,* 700 F.2d at 255. When this factor is coupled with the other aspects of this case, however, a truly unique case is presented where reinstatement is not justified.

▪ The final issue before us is whether the district court erred in awarding $16,-

---

1. At oral arguments, Mrs. George's attorney stated that he had no objection to this court's vacating the district court's finding on dispa-

rate impact so long as the district court's finding on disparate treatment was upheld.

000 in damages. The proper remedy in a Title VII case "is that which makes the plaintiff whole." *Garza v. Brownsville Independent School District, supra,* 700 F.2d at 255. Since Betty George was improperly terminated on July 31 but would have been properly terminated on September 7, the amount which would "make the plaintiff whole" as to her lost wages is that amount which would properly compensate her for her losses from July 31 to September 7. Since in the facts presented in this case Mrs. George would have been properly terminated on September 7, 1979, she is not entitled to recover any damages for lost wages which arose after September 7, 1979. Since the district court's award of damages was not broken down, we must remand this action to the district court to recompute damages in light of this opinion and give the elements thereof.

In conclusion, the district court's finding of disparate impact is vacated, the court's award of damages is reversed and remanded, and in all other respects the district court is affirmed.

AFFIRMED IN PART, VACATED IN PART, REVERSED AND REMANDED IN PART.