**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES (AFGE) LOCAL 1617 and American Federation of Government Employees (National), 10th District, Defendants.**

No. SA–86–CA–944.

United States District Court,
W.D. Texas,
San Antonio Division.

Jan. 16, 1987.

Henry L. Gilliam, E.E.O.C., T.A. (Tony) Guajardo, E.E.O.C., San Antonio Dist. Office, San Antonio, for plaintiff.

Joseph F. Henderson, Staff Counsel, American Federation of Government, Employees, AFL–CIO, Washington, D.C., for defendants.

## ORDER

SESSIONS, Chief Judge.

ON THIS DATE came on to be considered the motion of Defendant, American Federation of Government Employees Local 1617, for summary judgment, and the motion of Defendant, National American Federation of Government Employees, to dismiss or for summary judgment.

Defendant, Local 1617 of the American Federation of Government Employees (hereinafter "AFGE Local 1617" or "the Local") has moved for summary judgment. The Local basically contends that through the process of accord and satisfaction with the charging party, the Plaintiff's action has become moot as a matter of law. Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure; *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026 (5th Cir.1982). The party seeking summary judgment bears an "exacting burden of showing that there is no actual dispute as to any material fact in the case." *Impossible Electronic Techniques, Inc.*, 669 F.2d at 1031; *United States Steel Corporation v. Darby*, 516 F.2d 961, 963 (5th Cir.1975).

In determining whether the movant has met its burden, this Court must view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing summary judgment. *United States Steel Corporation*, 516 F.2d at 963. All reasonable doubts as to the existence of a genuine issue of material fact must be resolved against the movant party. *Jones v. Western Geophysical Company of America*, 669 F.2d 280, 283 (5th Cir.1982). When determining whether to grant summary judgment, the Court is merely determining whether a factual dispute exists and is not required to attempt to resolve those disputes. If it is determined that a factual dispute exists, a motion for summary judgment will be denied. *Id.* This is true even where the parties agree as to the basic facts but where reasonable minds may differ as to the interpretation of those facts. *Impossible Electronic Techniques, Inc.*, 669 F.2d at 1031. The fact that it appears to the Court that the non-movant party is unlikely to prevail at trial or that the movant's statement of facts appears to be more plausible is not a reason to grant summary judgment. *Jones*, 669 F.2d at 283. Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond with any factual assertion that would preclude summary judgment. *Cleckner v. Republic Van & Storage Co., Inc.*, 556 F.2d 766, 771 (5th Cir.1977).

In the broadest terms, there are only two issues of fact which may possibly be in dispute. These issues are (1) whether AFGE Local 1617 is liable for the alleged employment discrimination and (2) if AFGE Local 1617 is liable, the amount of damages sustained by Ms. Mejia. After due consideration, the Court is of the opinion that there are no genuine issues of material fact to be resolved.

As to this first issue, it can be assumed that Ms. Mejia's termination of employment on April 29, 1983, was an unlawful act of employment discrimination.[1] Accordingly, the purpose of this suit would be to make Ms. Mejia " 'whole' by restoring [her], 'so far as possible . . . to a position where [she] would have been were it not for the unlawful discrimination.' " *Ford Motor Co. v. EEOC,* 458 U.S. 219, 230, 102 S.Ct. 3057, 3064, 73 L.Ed.2d 721 (1982) (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975)). As such, the second issue mentioned above is brought into play and it must be determined whether the amount of damages sustained by Ms. Mejia is a genuine issue of material fact in dispute.

AFGE Local 1617 contends that Ms. Mejia's damages are not in dispute. AFGE Local 1617 contends that the total amount of damages sustained by Ms. Mejia is $2,432.00. AFGE Local 1617 contends that this amount represents the full wages she would have earned had she remained employed by the Local between the date she was fired and August 12, 1983, the date Ms. Mejia would have been terminated (had

she still been employed), for legitimate, non-discriminatory purposes. *Defendant AFGE Local 1617's Motion for Summary Judgment* at 2. The Plaintiff, however, contends that the amount of wages Ms. Mejia lost because of her wrongful discharge is a disputed issue of material fact. The Plaintiff alleges that Ms. Mejia's back pay should be calculated from the date of her discharge, April 29, 1983, to June 4, 1984, the date AFGE Local 1617 reinstated her.[2] The Plaintiff contends that the amount of back pay still owed to Ms. Mejia is approximately $4,768.00. *Plaintiff's Response in Opposition to Defendant AFGE Local 1617's Motion for Summary Judgment* at 3 (hereinafter "Plaintiff's Response") (citing *Affidavit of Consuelo Mejia,* Attachment 1). Although the length of time for which the back pay should accrue is disputed by the parties, the Plaintiff does not dispute AFGE Local 1617's contention that the $2,432.00 amount already paid to Ms. Mejia represents an amount of back pay equal to the full amount of wages Ms. Mejia would have earned had she remained employed by the Local between the dates she was fired and August 12, 1983.

█ It is clear that a victim of employment discrimination is only entitled to be "made whole."[3] A victim of employment discrimination is not entitled to be put in a better or more stable employment position than they would have enjoyed in the absence of discrimination. *See Ford Motor Co.,* 458 U.S. at 234, 102 S.Ct. at 3066; *see also George v. Farmers Electric Coop., Inc.,* 715 F.2d 175, 179 (5th Cir.1983) (plain-

---

**1.** Ms. Mejia complains that she was terminated by Dan Ramos, the former president of AFGE Local 1617, because she refused to have sexual relations with certain Union officials.

**2.** As Ms. Mejia was re-employed by AFGE Local 1617; reinstatement and injunctive relief are thus not available remedies in this case. *See* note 14, *infra.* As to the types of awards available in a Title VII case, *see* Section 706(g) of the Civil Rights Act of 1964, 78 Stat. 261, as amended, 42 U.S.C. § 2000e–5(g). The Plaintiff does contend, however, that if Ms. Mejia had been awarded all of the damages to which she is entitled, the public interest requires that this litigation go forward. As to the public interest issue, *see* pages 748 to 751, *infra.*

**3.** It should be noted that Ms. Mejia received interim earnings of $3,120.00 after her discharge and before her reinstatement. Although it is not clear exactly on what dates she earned this amount, it is possible that she earned part of this amount between the date of her discharge and August 12, 1983, the date AFGE Local 1617 contends that she would have been discharged anyway. Accordingly, Ms. Mejia may have already been put in a better position than that of just being made whole. The question of whether Ms. Mejia has already been made whole, however, does not enter into this Court's opinion.

tiff, who would have been properly terminated on September 7, 1979, is not entitled to recover damages for lost wages arising after that date); *Welch v. University of Texas,* 659 F.2d 531, 535 (5th Cir.1981) (where grant under which the plaintiff was paid expired on July 31, 1977, the district court properly awarded back pay from the date of his discharge to that date). Accordingly, if Ms. Mejia would have been terminated for legitimate, non-discriminatory purposes, on August 12, 1983, her entitlement to back pay would have terminated on that date as well.

In regards to this issue, AFGE Local 1617 has submitted the affidavit of the former trustee of the Local, Alfonso Garcia.[4] AFGE Local 1617 contends that the facts as set out in the affidavit entitle the Local to summary judgment. In pertinent parts of his affidavit, Mr. Garcia certifies that:

> 7. One of my first obligations as Trustee was to control expenses and identify the extent and sources of the Local's mismanagement. To this end, I "cleaned house" by terminating all employees except the Lead Secretary, June Phelt. Ms. Phelt had over 12 years experience with AFGE Local 1617, was its best and highest paid secretary, and was the only employee I could afford to keep on the payroll. All the other secretaries were terminated as were the three other employees of Local 1617. Indeed, with no staff, there was no justification to employ more than one secretary.
>
> .     .     .     .     .
>
> 9. Connie Mejia was a trainee clerk typist/receptionist when she was hired by AFGE Local 1617 on July 2, 1982. Dan Ramos, then president of AFGE Local 1617, fired her on April 29, 1983. At that time, she was still a trainee typist. She was not a secretary, nor was she capable of performing independently as a lead secretary with all the experience and knowledge that is required. There

was no collective bargaining agreement representing the employees of Local 1617 at that time. Thus, Connie Mejia had no "seniority" recall rights.

> 10. Had Connie Mejia been employed by AFGE Local 1617 when trusteeship was imposed, I would have had no choice but to terminate her on August 12, 1983 along with the other 5 employees so terminated as her experience and capabilities would not permit AFGE Local 1617 to employ her instead of Ms. Phelt, our Lead Secretary, who could operate every machine, prepare professional (legal) documents, correct spelling and grammar, etc. None of the other typists could offer these skills. Unfortunately, the Local could not afford to keep, during this time of austerity and reorganization, an entry-level typist.
>
> 11. Eventually, AFGE Local 1617 hired enough representatives and business agents to support additional secretarial staff. At first, the local could afford to hire only competent *experienced* typists. Later, we could afford to hire, for less money, beginning typists. Thus, we hired first Helen Wilbanks at $5.74 per hour. She had over 20 years experience as a secretary and had excellent secretarial skills.
>
> 12. When we were finally able to increase our staff to include beginning typists, we called first Connie Mejia and offered her the job. She began on June 4, 1984 and continued to improve her skills, but was still a trainee typist with less than 1 year's experience. At the time she voluntarily left employment, she was only making $5.03 per hour, still much less than the rates we were paying experienced secretaries (Helen Wilbanks —$6.37; Aurora Pena—$6.90; June Phelt—$8.96).

*Affidavit of Alfonso Garcia* at 2–4 (emphasis in original) (hereinafter "Garcia affidavit").

---

4. AFGE Local 1617 was placed in trusteeship by the National AFGE on August 12, 1983, due to the Local's failure to file appropriate financial reports with the Department of Labor and because of a substantial per capita debt owed to

the National AFGE. *Affidavit of Alfonso Garcia* at 1. Mr. Garcia served as trustee of AFGE Local 1617 from August 12, 1983, until August of 1986, when AFGE Local 1617 was restored to autonomy by the National AFGE. *Id.*

In response to the issue of whether Ms. Mejia would have been terminated on August 12, 1983, the Plaintiff has stated that:

Plaintiff can show that issues of material fact do exist in this case, as is clearly indicated in the Affidavit of Consuelo Mejia, Attachment No. 1. For example, Defendant contends that had Ms. Mejia still been employed by Local 1617 in early August 1983, 'she also would have been terminated as the Local ... could not have supported more than one clerical employee ...' It is not certain at all that Ms. Mejia 'would have been terminated' by the trustee. Defendant AFGE National admitted in its answers to Plaintiff's Interrogatories that Ms. Mejia's work was satisfactory after their Trustee took over operation of the Local. June Phelt was retained.

*Plaintiff's Response* at 2. At other places in the response, the Plaintiff makes general, conclusory allegations that whether or not Ms. Mejia would have been terminated on August 12, 1983, is a disputed issue of material fact. *See Plaintiff's Response* at 3 ("The amount of wages Ms. Mejia lost because of her wrongful discharge is an issue of material fact ... [w]hether or not Ms. Mejia would have actually have been terminated ... [is a] genuine [issue] of material fact."); *id.* at 5 ("Plaintiff submits that the liability of Defendant to pay back pay, and the amount of same, are genuine issues of material fact").

In reply, AFGE Local 1617 states that the mere general denials contained in the Plaintiff's response are insufficient to overcome the credible evidence presented by the Garcia affidavit. *Defendant Local 1617's Reply to Plaintiff's Opposition to Motion for Summary Judgment* at 1–4 (hereinafter "Local 1617's Reply"). Accordingly, AFGE Local 1617 contends that paragraphs 10, 11 and 12 of the Garcia affidavit, *supra,* are to be taken as true such that (a) Ms. Mejia would have been terminated on August 12, 1983, (b) only Ms. Phelt was eligible for continued employment during the trusteeship reorganization,

and (c) Ms. Mejia was re-employed as soon as the Local was able to increase its staff. *Local 1617's Reply* at 2–3. This Court finds that AFGE Local 1617's contention is well taken.

■ Rule 56(e) of the Federal Rules of Civil Procedure provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." In this respect, the burden on the non-movant party is not especially heavy; however, he must counter the allegations of the moving party with specific facts that present a genuine issue of material fact worthy of trial rather than showing mere general allegations. *Gossett v. Du-Ra-Kel Corp.,* 569 F.2d 869, 872 (5th Cir.1978); *see also John Hancock Mutual Life Ins. Co. v. Johnson,* 736 F.2d 315, 316 (5th Cir.1984); *Nicholas Acoustics & Specialty Co. v. H & M Constr. Co., Inc.,* 695 F.2d 839, 844 (5th Cir.1983). As to Rule 56(e) affidavits generally, see Moore's Federal Practice ¶ 56.22[2].

■ Here, as shown by the Garcia affidavit, AFGE Local 1617 established, initially, its right to a summary judgment.[5] This affidavit establishes that the amount of back pay owed to Ms. Mejia is not a disputed issue of material fact. Accordingly, the burden of proceeding then shifted to the Plaintiff to show that AFGE Local 1617 should not be granted summary judgment. *Nicholas Acoustics,* 695 F.2d at 844; *Du-Ra-Kel Corp.,* 569 F.2d at 872.

Although the Plaintiff submitted the affidavit of Ms. Mejia, the Court has reviewed this affidavit and finds that it does not provide *any* facts which would counter paragraphs 10, 11 and 12 of the Garcia affidavit. Furthermore, the bald asser-

---

5. The Garcia affidavit adequately measures up to the standards for a properly drafted Rule 56(e) affidavit. *See Fowler v. Southern Bell* *Telephone & Telegraph Co.,* 343 F.2d 150, 154 (5th Cir.1965).

tions of the Plaintiff's response that there are issues of material fact in dispute are insufficient to counter the specific factual allegations of AFGE Local 1617's affidavit.

The absence of specific controverting facts in Ms. Mejia's affidavit leaves the situation just as if the Plaintiff had not filed any opposing affidavit. "It has always been perilous for the opposing party neither to proffer any countering evidentiary materials nor file a 56(f) affidavit. And the peril rightly continues." Moore's, Federal Practice ¶ 56.22[2] at 56–1341 to 56–1342. It has been stated that:

> The tools and devices of discovery are more than options and opportunities. Rule 56 expressly exacts them by negative compulsion of judicial denoument— saying in effect, 'Meet these affidavit facts or judicially die.' Diligence in opposing a motion for summary judgment is required, for such a motion with supporting logistics and gear does not lose its thrust by an opponent's complacence.

*Southern Rambler Sales, Inc. v. American Motors Corp.*, 375 F.2d 932, 937 (5th Cir.), *cert. denied*, 389 U.S. 832, 88 S.Ct. 105, 19 L.Ed.2d 92 (1967); *see also First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–290, 88 S.Ct. 1575, 1592–1593, 20 L.Ed.2d 569 (1968).

The Garcia affidavit presents credible summary judgment evidence as to the damage issue and it is clear that the Plaintiff has not contravened this evidence by the mere general and conclusory allegations that material issues of fact exist. In such a situation:

> In spite of the usual rule that all doubts are resolved against a moving party, there is one inference to which he is entitled by virtue of the last sentence in Rule 56(e). If the movant presents credible evidence that would entitle him to a directed verdict if not controverted at trial, this evidence must be accepted as

true on a motion for summary judgment when the party opposing the motion does not offer counter-affidavits or other evidentiary material supporting his contention that an issue of fact remains, or does not show a good reason, in accordance with Rule 56(f), why he is unable to present facts justifying his opposition to the motion.

C. Wright & A. Miller, Federal Practice and Procedure § 27.27 at 133 to 137 (footnote omitted). The Plaintiff has wholly failed to meet its burden of producing evidence which would show that there is a genuine issue of material fact.

Furthermore, the Plaintiff has not suggested, pursuant to Rule 56(f), that it has been unable to present by affidavit the facts essential to support its opposition to AFGE Local 1617's motion. Rule 56(f) provides that:

> Should it appear from the affidavit of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

*Id.* [6] Accordingly, as the Plaintiff has not filed a response pursuant to Rule 56(f) and as the facts stated in paragraphs 10, 11 and 12 of the *Garcia affidavit* have not been controverted by Ms. Mejia's affidavit or by the Plaintiff's response, they are taken as true by this Court. Therefore, the Garcia affidavit establishes that Ms. Mejia would have been terminated on August 12, 1983, for legitimate, non-discriminatory purposes. Furthermore, the affidavit establishes that Ms. Mejia was re-employed as soon as the Local was able to increase its staff. As such, Ms. Mejia's back pay award would be limited to the $2,432.00 amount as contended by AFGE Local 1617.[7] The Garcia affi-

---

**6.** AFGE Local 1617 contends that as Plaintiff has engaged in discovery on these issues, "it is unlikely such an exception to the rule requiring affidavit opposition could be maintained." *Local 1617's Reply* at 3. The Court notes that this reply was filed on December 4, 1986. As of this

date, the Plaintiff has not sought to supplement its response in opposition.

**7.** Although Ms. Mejia's affidavit states that she is entitled to back pay from April 29, 1983, the date she was fired, until June 4, 1984, the date of her reinstatement, the Court does not find

davit thus establishes that there are no material facts in dispute; summary judgment may therefore be entered if appropriate.

As to the appropriateness of summary judgment, AFGE Local 1617 contends that as it has already paid Ms. Mejia her full back pay some five months prior to the institution of this suit,[8] the Plaintiff's claims should be dismissed as moot. The Plaintiff, however, contends that this suit is not moot because it was not brought solely on behalf of the charging party, but was also brought for the broader purpose of vindicating the "public interest." *Plaintiff's Response* at 7. The Plaintiff relies pon *EEOC v. McLean Trucking Co.*, 525 F.2d 1007 (6th Cir.1975); *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352 (6th Cir.), *cert. denied*, 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975); and *EEOC v. Dayton Tire & Rubber Co.*, 573 F.Supp. 782 (S.D. Ohio 1983).[9] As such, the Plaintiff contends that this suit should be permitted to go forward.

Initially, the Court will point out that AFGE Local 1617, in reply, contends in part that these three cases should not control the present fact situation because the Local paid Ms. Mejia the full amount of her back wages prior to the initiation of any suit by the Plaintiff whereas the cases relied upon by the Plaintiff all involved a settlement with the charging party subsequent to the initiation of suit by EEOC. *Local 1617's Reply* at 5–6.[10] The Court, however, is not convinced that these cases should be distinguished on the basis of whether the Defendants' settlement with the charging party occurred before or after suit was initiated by the EEOC.[11] As the EEOC has the right to file suit pursuant to Section 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5(f)(1), the Court does not see why a pre-suit settlement with the charging party should thwart the EEOC's initiation of suit as opposed to a post-suit settlement. The EEOC is not barred by the doctrine of res judicata from basing its complaint on

that this statement properly contravenes paragraphs 10, 11 or 12 of the Garcia affidavit. *See Affidavit of Consuelo Mejia* at 2. This portion of Ms. Mejia's affidavit does not state specific facts showing that she would not have been terminated on August 12, 1983, nor rehired previously to June 4, 1984, and the Court will not infer such facts from her statement. Furthermore, in support of the Plaintiff's contention that it is not certain at all that Ms. Mejia would have been terminated by the trustee on August 12, 1983, the Plaintiff cites to an interrogatory answer of the National AFGE which states in substance that Ms. Mejia's work was satisfactory after the trustee took over operation of the Local. *Plaintiff's Response* at 2. Although answers to interrogatories are proper opposition to a Rule 56(e) affidavit, *see* Moore's, Federal Practice ¶ 56.-11[5], the Court does not find that this interrogatory answer contravenes either paragraphs 10, 11 or 12 of the Garcia affidavit.

**8.** On or about January 28, 1986, AFGE Local 1617 sent to Ms. Mejia a check for $2,432.00, representing the full wages she would have earned had she remained employed by the Local between the date she was fired and August 12, 1983, the date the rest of the staff was terminated for business considerations. *Defendant AFGE Local 1617's Motion for Summary Judgment* at 2.

**9.** *McLean*, *Kimberly-Clark* and *Dayton Tire* each arose in the situation where the charging party had filed a suit on its own and the EEOC either

tried to permissibly intervene in the charging party's suit or the EEOC attempted to file a separate suit. In all three cases, the issue was whether the EEOC's claim or suit should be dismissed when the charging party settled its own claim or suit with the defendants. Here, this case presents the unusual situation where the charging party was never involved in a suit of its own.

**10.** It appears that AFGE Local 1617 contends that *Kimberly-Clark*, *McLean* and *Dayton Tire* all involve situations where the defendant reached a settlement with the charging party after the initiation of suit by the EEOC. For instance, AFGE Local 1617 states that "the court in *EEOC v. Kimberly-Clark* found that EEOC's lawsuit filed on February 2, 1973, concerning allegations also raised in a private class action suit filed by Mr. Floyd Munn on August 31, 1972, was not rendered moot by the subsequent settlement of the *Munn* action." *Local 1617's Reply* at 5–6 (citing *Kimberly-Clark*, 573 F.Supp. at 1362). It is clear, however, that in *Kimberly-Clark*, the EEOC filed suit several years after the charging parties and defendants had settled. *Kimberly-Clark*, 511 F.2d at 1361.

**11.** Although this Court expressly finds that AFGE Local 1617 did not reach a "settlement" with the charging party, the net effect is the same—the charging party may not seek additional damages because she has already received the full amount of damages as determined by this Court.

charges of discrimination which it never agreed to settle. *Kimberly-Clark*, 511 F.2d at 1361. Moreover, it has been stated that a contrary holding would conflict with Congressional intent. *Id.* at n. 12. Instead, the basis for distinguishing these cases is whether there exists here a public interest which favors continuation of this suit. On this basis, the Court finds that these cases are properly distinguished because there is here no public interest for the Plaintiff to vindicate.

An analysis of *Kimberly-Clark, McLean* and *Dayton Tire* shows the type of public interest which has allowed the EEOC to continue suits over Defendants' allegations of mootness. In *Kimberly-Clark,* a court-approved settlement of a private class action alleging discriminatory lay-offs of female employees was asserted as a bar to an EEOC action based in part on the same alleged discriminatory lay-offs. After a detailed analysis of legislative history, the court concluded that although the damages of the charging parties may be limited by the terms of the settlement, the EEOC's suit may go forward because the "EEOC sues to vindicate the public interest, which is broader than the interests of the charging parties." *Kimberly-Clark*, 511 F.2d at 1361. The court stated that although there was a need to avoid duplication of proceedings, this was not a problem because the EEOC's investigation had allegedly revealed unlawful practices broader than those found in the private complaint, and the EEOC was entitled to bring its own suit based on its investigation's revelations. *Id.* at 1363. As such, the public interest which permitted this suit to go forward was the fact that the Commission had filed suit on the basis of charges broader than those alleged by the charging party.[12]

In *McLean,* the court rejected the Defendant's allegations of mootness and held that the EEOC suit could go forward even though a later, separate Title VII suit filed by the charging party was dismissed pursuant to a settlement. *McLean*, 525 F.2d at 1010. Initially, the court reiterated the *Kimberly-Clark* holding that settlement by the charging party would not, necessarily, bar the EEOC from filing suit as the "EEOC sues to vindicate the public interest, which is broader than the interest of the charging parties." *Id.* at 1010 (citing *Kimberly-Clark*, 511 F.2d at 1361.) The court further added that there would be no problem of duplication of proceedings because the EEOC investigation had revealed practices broader than those involved in the charging party's particular situation. *Id.* at 1010 n. 8. Accordingly, as in *Kimberly-Clark,* the court found that the public interest which allowed the suit to go forward was the fact that the EEOC's suit was brought on charges broader than those of the charging party.[13]

In *Dayton Tire,* the court was confronted with a situation unlike that of *Kimberly-Clark* or *McLean.* In *Dayton Tire,* it was conceded by the EEOC that the EEOC's complaint was not broader than the allegations in the charging party's charge of discrimination. *Dayton Tire,* 573 F.Supp. at 786. The defendants had moved to dismiss the amended complaint arguing that the EEOC's suit was, in effect, moot. *Id.* at 784. Although the court stated that the defendants' position was not entirely without logic, the court found that such a position defined too narrowly the EEOC's function in bringing a suit. *Id.* at 786. The court stated that "[t]he EEOC does not bring a suit *solely* for the charging party, even if the charging party is the

12. Presumably, in connection with the broader charges, those persons covered by the broader charges (as opposed to the charging party) would be entitled to damages. Although both *Kimberly-Clark* and *McLean* found that the EEOC's broader charges defeated the defendants' claim of mootness, both decisions also must have relied on the fact that the plaintiff could recover damages greater than that obtained by the charging party. As shown in *Dayton Tire,* the fact that the EEOC sought

greater damages than that obtained by the charging party was the sole reason in support of the public interest rationale. Here, however, the Plaintiff has not brought suit on the basis of charges broader than those alleged by the charging party nor can the Plaintiff seek damages greater than those obtained by the charging party.

13. *See* note 12, *supra.*

only victim of discrimination named in the complaint." *Id.* (emphasis in original) The court then stated:

> As Judge Julian Abele Cook stated, *Kimberly-Clark* and *McLean* stand for the proposition 'that *whenever* the EEOC sues under § 706, in this circuit, the suit is broader than a private suit because the EEOC is trying to vindicate the interest of the public.'

*Id.* (emphasis in original) (citing *EEOC v. Stroh Brewery Co.*, 83 F.R.D. 17, 22 (E.D. Mich.1979)).

Accordingly, the court found that "it would appear that, in a typical situation (such as in *Kimberly-Clark* or *McLean*), the EEOC will only pursue a suit, once a charging party has settled, if they are suing on allegations *broader* than those presented by the charging party." *Id.* at 786–87 (parentheses and emphasis in original).

In *Dayton Tire,* however, the EEOC was pursuing a suit which was not any broader than the charging party's charge of discrimination. The EEOC contended that this was permissible because the charging party had settled "with less than acceptable terms." *Id.* at 787. The court found that "[t]his would appear to be a proper exercise of vindicating the public interest, in that the EEOC may feel that only a larger settlement (or award) will deter violations of the discrimination laws by the present defendants or similarly situated defendants." *Id.* (parentheses in original).

In finding that this appeared to be a proper exercise of vindicating the public interest, the court stated that:

> The Court is aware that the Plaintiff's original conciliation offer was quite close to the terms of the OCRC settlement with Defendants. As noted above, Defendants settled for $18,000.00 (including attorneys fees). In 1981, Plaintiff offered to settle with Defendants for $20,000.00 Affidavit of Arlene Hart, ¶ 10, attached to Doc. # 9. This offer was rejected by the Defendants. Id., ¶ 11.

Given the proximity of the potential and ultimate settlements, as well as the fact that Plaintiff is bringing allegations identical to those of the charging party, it might be argued that, *on the facts of this case*, Plaintiff did not and is not pursuing an interest broader than that of the charging party. Under differing factual circumstances, Judge Cook's statement that an EEOC suit is *always* broader than a private suit may not be true. To hold otherwise would reduce the 'public interest' formulation to a talisman. However, while this case may approach the mootness line, it does not cross over than line. Plaintiff should not be bound in its enforcement efforts to a settlement offer, since withdrawn, which was more than a de minimus amount larger than the settlement by the charging party. Likewise, the use of broader allegations is not a mandatory requirement for the EEOC to bring suit. Ms. Hodgin's case was not formally litigated in either state or federal courts. Further proceedings herein will not be completely duplicative of the proceedings involving Ms. Hodgin.

For these reasons, the EEOC's action is not moot, and Defendants' motion to dismiss must be, and hereby is, overruled.

*Id.* at 787 (emphasis in original). Although the EEOC's complaint was not broader than the allegations of the charging party, the court found that the EEOC could still pursue its suit as a proper exercise of vindicating the public interest, because the EEOC was seeking a larger settlement than the defendants obtained with the charging party.

■ *Kimberly-Clark, McLean* and *Dayton Tire,* however, are factually distinct from this case. Here, the Plaintiff's complaint is not broader than the allegations of the charging party. Further, based on this Court's determination of the appropriate amount of damages, *supra,* 744 to 748, the Plaintiff may not seek any additional damages.[14] Accordingly, the only two situ-

---

**14.** It is clear that the Plaintiff may not seek any additional damages. First, Ms. Mejia has already been paid the full amount of the back pay owed to her. Second, reinstatement is not an issue in this case as Ms. Mejia was reinstated on June 4, 1984. Finally, injunctive relief is not an

ations found sufficient in the past to defeat Defendants' allegations of mootness are entirely lacking.

Accordingly, it appears that, *on the facts of this case*, Judge Cook's statement that an EEOC suit is *always* broader than a private suit is not true. "To hold otherwise would reduce the 'public interest' formulation to a talisman." *Dayton Tire*, 573 F.Supp. at 787. This case has not only approached the mootness line, but it has crossed over that line. This Court is not saying that the Plaintiff is bound by a settlement between the Defendants and the charging party. On the contrary, there was no settlement in this case. What the Court is saying, is that in a situation such as here, where the EEOC brings suit on a complaint which is *not broader* than the allegations of the charging party, and where the charging party's damages have been *fully* satisfied, the public interest is not vindicated by allowing the EEOC to continue its suit and the case should be dismissed as moot. Therefore,

IT IS HEREBY ORDERED that Defendant American Federation of Government Employees Local 1617's motion for summary judgment be and is hereby GRANTED.

IT IS FURTHER ORDERED that the above-styled and numbered cause be and is hereby DISMISSED WITH PREJUDICE as to all Defendants and all claims.

IT IS FURTHER ORDERED that Defendant National Federation of Government Employees' motion to dismiss or for summary judgment be and is hereby DENIED AS MOOT as the Court has dismissed this cause with prejudice.

issue in this case. Although the Plaintiff's complaint sought injunctive relief, the Plaintiff has not reurged this ground as a basis for finding that the suit is not moot. However, even if the Plaintiff did reurge this ground, the Court would not find such relief appropriate. Because the former president has now been replaced and Ms. Mejia was reinstated, and because the Plaintiff did not bring any broader charges showing an ongoing discrimination, the Plaintiff would not be entitled to injunctive relief.