FRANZ CHEMICAL CORPORATION, Plaintiff-Appellant,

v.

PHILADELPHIA QUARTZ COMPANY, Defendant-Appellee.

No. 77–1153.

United States Court of Appeals, Fifth Circuit.

May 1, 1979.

* Added per Judge Godbold with Judge Vance's consent.

Charles R. Hancock, Dickinson, Tex., for plaintiff-appellant.

F. Walter Conrad, John A. Kenney, Frank Knapp, Houston, Tex., for defendant-appellee.

Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

On December 5, 1966, Franz Chemical Corporation (Franz) and Philadelphia Quartz Company (PQ) entered into a temporary, nonexclusive, nontransferable patent license agreement under which Franz was licensed to sell the PQ product QURAM 3365 and which provided for the future granting of a permanent license agreement. QURAM 3365 is a silicate vehicle comprising the operative ingredient of a corrosion-resistant coating which was in this instance to be used to protect the metal hulls of ships. In order to supply the coating for its jobs, Franz ordered from PQ the necessary QURAM 3365 to be resold as FranZinc 44. These orders were filled subject to a sales order acknowledgement form and warranty both of which limited PQ's liability for damages. The original license agreement authorized Franz to repackage QURAM 3365 as FranZinc 44 and market it throughout the United States. This agreement was later modified to expand Franz' authorized selling territory to include Spain and Poland. In accordance with this expanded agreement Franz contracted with a Polish shipbuilding concern, Centromor, to supply FranZinc 44 as a coating to be applied to parts of two Mexican ships which were to

be constructed by Centromor at its shipyards in Szczecin, Poland. The FranZinc 44, when applied in Poland, failed.[1] This lawsuit resulted.

Franz based its action against PQ upon three separate theories, only two of which concern us here.[2] First, Franz sought recovery for various damages claimed to have been sustained as a result of the failure of FranZinc 44. Second, Franz sought damages for PQ's wrongful refusal, after the expiration of a temporary license agreement, to grant Franz a permanent license. Relief was denied by the district court when it granted PQ's two motions for partial summary judgment. We affirm.

On appeal Franz disputes the district court's finding that there existed no genuine issue as to any material fact and urges that the court's granting of the motions for partial summary judgment was in error. Additionally, Franz argues that the district court erred in deciding PQ's motion for partial summary judgment on the written submissions.

## I. GENUINE ISSUE OF FACT

### A. Claim for Product Failure

The district court, in granting PQ's motions for partial summary judgment, held that Franz' remedy was limited by the contract of sale to replacement, that the product was replaced, and that the limitation was not unconscionable. It also held that the license agreement was not a part of the contract for sale so as to nullify the limitation of remedy but was merely an agreement by the licensor not to sue the licensee for infringement.

Franz initially attacks the underlying reasoning supporting the district court's

granting of the partial summary judgments. Franz questions the court's determination that there was no genuine issue of fact as to Franz' claim for product failure. Specifically, Franz contends that there were manifest genuine issues of fact concerning the effect of the temporary license agreement and the commercial setting in regards to the finding of unconscionability.

### 1. Temporary Patent License

Concerning the effect of the patent license agreement, Franz concedes that a nonexclusive license agreement is merely an agreement by the licensor not to sue the licensee for infringement of the intellectual property rights being transferred and, as such, would not be part of the contract for the sale of the licensed invention so as to affect any limitation therein.[3] Franz, on the other hand, argues that there was presented an evidentiary dispute as to what was intended to be included in the license contract. Specifically, Franz contends that the dickered terms and evidence as to negotiations were all relevant factual issues which should have prevented the district court from finding that there existed a bare, nonexclusive licensing agreement as a matter of law. Be that as it may, Franz ignores paragraph (d) of the license provision which provides:

> this agreement is executed and delivered with the understanding that it embodies the entire agreement between the parties and that there are no prior representations, warranties, or agreements relating thereto. No modification hereof shall be binding on either party unless reduced to writing and signed by both parties hereto.

Franz' reply to PQ's motions for a partial summary judgment, Franz stated that it was not pursuing the "tortious interference" cause of action and waived any claim under it.

---

1. The paint would not maintain a proper or uniform thickness, it developed cracks, and it would not adequately adhere to the metal surfaces.

2. Franz originally sought recovery on a third theory claiming that PQ had tortiously interfered with Franz' pending acquisition and/or merger with Southern Imperial Coatings Corporation. Later, however, in page one of

3. See also 1 *Patent Law and Practice, Costner and Einhorn Patent Licensing Transactions*, § 1–01(2)(c) at 1–13; R. Ellis, *Patent Licenses*, § 211 at 238 (3d ed. 1958).

It is fundamental contract law under U.C.C. 2–202[4] that where a writing is intended by the parties as a final expression of their agreement, the writing may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. Even assuming that the evidence Franz urges upon us is not totally inadmissible as contradictory, it would still have to conform with U.C.C. 2–202(a) or (b). For a final writing to be explained or supplemented under U.C.C. 2–202(a) this explanation or supplementation must be in the form of a course of dealing or usage of trade, or by a course of performance, none of which were here presented. What we have here is evidence concerning dickered terms and evidence pertaining to preliminary negotiations. U.C.C. 2–202(b) would likewise be of no avail. U.C.C. 2–202(b) provides that any such consistent additional terms may be allowed in to explain or supplement only where the court finds that the writing which is sought to be supplemented does not evidence the intention of both parties that it be the complete and exclusive statement of the terms of the agreement. In this instance, paragraph (d) serves as what is commonly referred to as a merger clause: it makes clear the intention of both parties that the agreement was to be the complete and exclusive statement of terms so as to preclude the consideration of any evidence as to consistent additional terms under U.C.C. 2–202(b). Finally, we can find no indication that the merger clause should be deemed unconscionable under U.C.C. 2–302. There is no reason to believe that its enforcement is not in good faith as required by U.C.C. 1–203 and there are no grounds on which to support a finding of fraud, duress, or mistake or to otherwise necessitate the invocation of this court's equitable powers.

## 2. Unconscionability

As a second point of attack Franz argues that even should we hold that the license agreement does not nullify the limitation of remedy, which we do, the limitation itself was nevertheless unconscionable.[5] Franz relies on U.C.C. 2–302 for the proposition that where it appears to the court that the contract or any clause thereof may be unconscionable, the court must afford the parties a reasonable opportunity to present evidence regarding the totality of circumstances surrounding the negotiation and execution in order to assist the court in making its determination. We cannot quarrel with the above statement; even so, we fail to see how it in any way advances Franz' position. It has been amply shown that Franz had such a reasonable opportunity in which to present any evidence which it might have. This opportunity presented itself in connection with PQ's February motion for a partial summary judgment. In that motion PQ brought attention to the fact that Franz was a commercial buyer, that Mr. Franz had been president and chief executive officer of a large national corporation, that Mr. Willis, Franz' President, was an accountant involved in several different businesses, that both Mr. Franz and Mr. Willis had many years experience in the chemical resistance coating industry, and that Franz' warranty to its buyers included a limitation of remedy clause with language practically identical to that used by PQ and here objected to by Franz. All of these

---

**4.** Texas and Pennsylvania have adopted substantially identical versions of the Uniform Commercial Code (U.C.C.) provisions which are cited in this opinion. The parties do not contend that the states have differed in their interpretation of these provisions. Consequently, we will refer to the applicable U.C.C. provisions without additional reference to their Texas or Pennsylvania statutory citations.

**5.** With regard to unconscionability, Comment One to U.C.C. 2–302, as adopted by both Texas and Pennsylvania, states:

This section is intended to allow the court to pass directly on the unconscionability of the contract or particular clause therein and to make a conclusion of law as to its unconscionability. The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.

facts relating to the commercial setting were brought out by PQ in their February motion. Franz had a sufficient opportunity in its reply filed July 26, 1976, to present confounding evidence but did not undertake to do so. We are satisfied that the district court could assume that no such confounding evidence existed and hold that as a matter of law the limitation was not unconscionable.[6]

### 3. New Issues on Appeal

■ At this juncture we are confronted with what PQ claims are new issues born of this appeal. Franz, however, urges that these issues are not new but were presented previously in the district court. Franz reasons that when PQ invoked U.C.C. 2–719[7] in its February motion for partial summary judgment this was sufficient to raise factual issues concerning the limitation of remedy provision. Specifically, Franz argues that this raised issues concerning whether the limitation of remedy provisions were actually terms of the contract, whether they were timely and conspicuous, whether they were clear and understandable, and whether they failed of essential purpose. We cannot agree. It is almost axiomatic that any genuine issue of fact must somehow be shown to exist at the district court level. Where the moving papers do not reveal the presence of a factual controversy and the opposing party manifests silent assent through inaction, the opposing party will not thereafter on appeal be heard to belatedly assert as grounds for reversal that some factual disputes implicit in the underlying arguments have yet to be resolved. Here Franz openly concedes that it relied on the facts of the case to rebut PQ's invocation of U.C.C. 2–719. Such reliance will not suffice. This court has interpreted Rule 56 F.R.C.P. as requiring that the opposing party must be diligent in countering a motion for summary judgment where no genuine issue of fact has been shown and that mere general allegations which do not reveal detailed and precise facts will not prevent the award of a summary judgment. See *Liberty Leasing Co. v. Hillsum Sales Corporation*, 380 F.2d 1013, 1014–15 (5th Cir. 1967). Because Franz did not expose these supposed factual disputes at the district court level we will not address them here.

### B. Permanent License

■ In granting PQ's motions for partial summary judgment the district court, in addition to finding that Franz' product failure remedy was limited to replacement, also found that, even though Franz' action was based on a total failure of PQ to grant a permanent license agreement, eventually PQ did tender a permanent license to Franz. The district court further held that Franz could not have been damaged by PQ's delay in the tender of the permanent license because, although there was some procrastination, PQ at all times stood ready to meet its commitment to Franz. We have

---

**6.** See also *Fredonia Broadcasting Corp., Inc. v. RCA Corporation*, 481 F.2d 781, 799 (5th Cir. 1972); *Southwest Forest Industries, Inc. v. Westinghouse Electric Corp.*, 422 F.2d 1013, 1019 (9th Cir. 1970).

**7.** U.C.C. 2–719 provides:

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

reviewed the facts and are in agreement with the district court's holding.

## II. *WRITTEN SUBMISSIONS*

 Lastly, Franz contends that the district court erred in deciding PQ's motions for partial summary judgment on the basis of written submissions. We do not agree.

Rule 78 F.R.C.P. provides in pertinent part:

> To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition.

Pursuant to that rule and to Rule 83 F.R.C.P.,[8] the United States District Court for the Southern District of Texas promulgated Local Rule 16. This rule provides for the setting of a date for a hearing as well as for what type of hearing will be held.[9] Moreover, Local Rule 16 is explicit in requiring the non-movant to seek leave of the court for the taking of evidence in open court or for oral argument in response to the opposed motion. We cannot say that Franz was in any way unfairly prejudiced. Franz did not request oral argument or an evidentiary hearing nor was the district court required to set the case for oral argument and evidentiary hearing on its own motion. It is our opinion that the district court properly "heard" the case on the basis of extensive written submissions.

The opinion of the district court is

AFFIRMED.

---

**8.** Rule 83 of the Federal Rules of Civil Procedure provides as follows:

*Rules by District Courts.* Each district court by action of a majority of the judges thereof may from time to time make and amend rules governing its practice not inconsistent with these rules. Copies of rules and amendments so made by any district court shall upon their promulgation be furnished to the Supreme Court of the United States. In all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules.

**9.** Local Rule 16 provides in pertinent part:

A. *Motions Generally.* Every written motion presented for filing shall state with particularity the relief or order sought, and shall be accompanied by a proposed order granting such relief. Prior to or on the date of filing of such motion, service thereof will be made on all counsel.

B. *Submission Day.* Every written motion when filed with the Clerk will fix a submission date, which will be a Monday not less than 5 days and not more than 30 days following the date of filing. If no submission date is fixed in the motion, it will be submitted on the first Monday following the expiration of 20 days from the date of filing.

C. *Time for Submission.* Such motions will be submitted to the Court on "submission day" and will be considered on that date, or thereafter as circumstances permit. Unless a hearing on such motion is requested by counsel or the Court, such submission will be in chambers, and counsel will not attend.

D. *Opposition to Motions.* Prior to submission day, each counsel (other than the movant) will advise the Clerk of Court in writing whether the motion is opposed or unopposed. If unopposed, counsel may simply so state. If unopposed by all parties, the motion will be submitted forthwith to the Court for approval, and will be granted routinely, unless the Court be of the view that the granting of such motion is not in the interest of justice.

If the motion is opposed, the opposing party will file a response thereto prior to the submission date, stating the grounds of such opposition. Such response may be accompanied by a brief.

\* \* \* \* \* \*

F. *Hearing in Open Court.* Hearing of motions in open court will be the exception, and will be allowed only on leave of Court. Where the moving or opposing party is of the view that the taking of evidence in open court is necessary, or that oral argument on the motion or opposition thereto is desirable, the motion or response will so state, and the Court may grant or deny leave therefor.