Bob THOMAS, Plaintiff-Appellant,

v.

HARRIS COUNTY, et al.,
Defendants-Appellees.

No. 84–2567.

United States Court of Appeals,
Fifth Circuit.

March 10, 1986.

Rehearing Denied April 7, 1986.

**649**

Before GOLDBERG, RANDALL and JOHNSON, Circuit Judges.

PER CURIAM:

Bob Thomas appeals from the district court's decision granting defendants' motion for summary judgment. We agree with the district court that there exist no genuine issues of material fact with respect to two of the defendants; we therefore affirm in part. However, because we believe that there is a disputed question of material fact as to whether the plaintiff was punished for having engaged in protected first amendment activity, and whether such punishment occurred pursuant to a conspiracy, we also reverse in part and remand.

Larry Watts, Houston, Tex., for plaintiff-appellant.

Paula W. Hinton, Asst. Dist. Atty., Houston, Tex., for River Oaks Property Owner, Inc., and Townes G. Pressler.

Ann Hardy, Asst. Co. Atty., Houston, Tex., for Harris County.

Ray Elvin Speece, Susan Spruce, Asst. Dist. Atty., Houston, Tex., for John Holmes.

James W. Hill, Asst. City Atty., Mary Madigan Dinan, Asst. Cty. Atty., Houston, Tex., for City of Houston, Mitchell, Whitmire, Brown, Johnson, Storemski and Schumann.

Mark Haas, K. Michael Mayes, Conroe, Tex., for R.H. Webber.

## I.

Plaintiff-appellant Bob Thomas ("Thomas"), a Houston Police officer, filed suit in June, 1983, claiming that he had been punitively transferred out of the Houston Police patrol of the River Oaks subdivision in Houston, Texas, in violation of his first and fourteenth amendment rights, and that various individuals had conspired to have Thomas removed from the River Oaks patrol.[1] Although Thomas' complaint and brief before this court recount several instances of his outspokenness which allegedly embarrassed the Houston Police Department and led to retaliatory action, the basis for this lawsuit is a transfer which occurred on September 16, 1982.

Thomas began patrolling the River Oaks subdivision in Houston in late 1981. On September 9, 1982, Thomas arrested one of the private security guards employed by

---

1. Named as defendants in Thomas' suit are: Harris County; John Holm s, in his official capacity as district attorney for Harris County; the City of Houston; Mayor Kathy Whitmire, in her official capacity as Mayor of the City of Houston; Lee P. Brown, individually and in his official capacity as Chief of the Houston Police Department; B.K. Johnson, individually and in his former official capacity as Chief of the Houston Police Department; T.D. Mitchell, individually and in his official capacity as Assistant Chief of the Houston Police Department; Fred Bankston, individually and in his former official capacity as Deputy Chief of the Houston Police Department; Dennis J. Storemski, individually and in his official capacity as Deputy Chief of the Houston Police Department; Dennis Schumann, individually and in his official capacity as Captain in the Houston Police Department; R.H. Webber, individually and in his official capacity as Lieutenant in the Houston Police Department; the River Oaks Property Owners, Inc. ("ROPO"); and Townes G. Pressler (the President of ROPO).

the River Oaks Property Owners, Inc. ("ROPO"). It was this arrest which triggered the events leading to this lawsuit. However, well before the evening of September 9, Thomas had noticed and complained of what he perceived to be the special treatment given to the River Oaks private security force by the Houston Police Department. He also believed that certain practices of the River Oaks private security force violated the Texas Private Investigators and Private Security Agencies Act. Tex.Rev.Civ.Stat. art. 4413(29bb) (Vernon 1976).[2] Then, on the evening of September 9, Thomas took action and arrested a member of the River Oaks private security force who, while wearing his revolver, had entered a restaurant which serves alcoholic beverages.

The day after the arrest, one of the defendants, Lieutenant Webber ("Webber"), allegedly informed Thomas that he would be transferred immediately as punishment.[3] However, Thomas was not immediately transferred because, according to Thomas, Webber's subordinates persuaded him that transferring Thomas would not be a good idea.

On September 13, a grand jury met to hear the case against the private security officer whom Thomas had arrested. The grand jury returned a no-bill.[4] Two days later, another defendant, Townes G. Pressler ("Pressler"), the President of ROPO, presented the Houston Police Department's Internal Affairs Division ("IAD") with an

official letter of complaint against Thomas from ROPO.[5] The next day, September 16, precisely one day after ROPO filed its complaint against Thomas with the IAD, Thomas was transferred out of the River Oaks subdivision. The order to transfer Thomas came from two of Webber's superiors, also named as defendants here, Deputy Chief Dennis J. Storemski ("Storemski"), and Captain Dennis Schumann ("Schumann").

## II.

Thomas brought suit under 42 U.S.C. § 1983 alleging that his first and fourteenth amendment rights had been violated by the so-called retaliatory transfer which Thomas says was designed to punish him for having outspokenly criticized the favored treatment given the River Oaks subdivision. Thomas further asserted in his complaint that the denial of his rights occurred pursuant to a conspiracy among the named defendants.

■ Several different motions for summary judgment were filed by different groups of defendants. The district court granted each one. In its oral disposition of the motions, the district court stated that Thomas' activity, i.e., his outspoken criticism of the Houston Police Department's ostensible favoritism towards River Oaks, was not protected under the first amendment. In addition, the district court further stated that there was no record evidence supporting the allegations of conspiracy or punitive transfer. On appeal, Thom-

2. According to Thomas, he received threats on several occasions from members of the River Oaks private security force who were angered by Thomas' whistle-blowing.

3. What transpired in this conversation between Webber and Thomas, which occurred on September 10, is disputed. Obviously, the district court could not have resolved this dispute on a motion for summary judgment, yet the dispute is arguably material since Thomas' claim of punitive transfer appears to rest in large part on what was presumably said to him at the September 10 meeting.

4. Defendant Holmes, who did not favor an indictment, personally presented this case to the grand jury. Thomas suggests that this personal

involvement by Holmes constitutes wrongdoing, but, as we indicate *infra* in part IV, Thomas' allegation that Holmes participated in a conspiracy to silence him rests entirely on Thomas' assertion that Holmes attended a ROPO meeting shortly before the grand jury met to consider the charges against the ROPO security guard. There is simply not a shred of evidence in the record, however, to support Thomas' bald assertion that such a meeting in fact occurred.

5. The complaint charged that Officer Thomas was antagonistic towards and periodically harassed members of ROPO's private security force as well as residents of River Oaks. The complaint, which cited specific instances of Thomas' supposedly objectionable misconduct, was resolved in Thomas' favor in June, 1983.

as argues that there are substantial issues of material fact concerning whether he was punitively transferred for having engaged in protected first amendment activity, and he further urges that the record also reflects questions of material fact regarding the conspiracy among the defendants to remove Thomas from the River Oaks area.[6]

### III.

Summary judgment is appropriate under Fed.R.Civ.P. 56(c) when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing that these conditions are satisfied, *United States Steel Corp. v. Darby*, 516 F.2d 961 (5th Cir.1975), and in ruling upon such a motion, the district court must look to the full record, including pleadings, affidavits, and depositions on file. *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir.1983). Upon review, this court will examine the same materials. *Simon v. United States*, 711 F.2d 740 (5th Cir.1983).

A party opposing a motion for summary judgment may not simply rest on allegations of future proof, but must present pleadings which themselves reveal a question of material fact. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981). Moreover, once a motion for summary judgment is made and the movant carries its burden of showing that there exist no genuine issues of material fact, the non-movant "may not rest upon the mere allegations ... of his pleading, but ... must set forth *specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added); *see*

*Aladdin Oil Co. v. Texaco, Inc.*, 603 F.2d 1107, 1112 (5th Cir.1979). We have stated that "the opposing party must be diligent in countering a motion for summary judgment ... and ... mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Franz Chemical Corp. v. Philadelphia Quartz*, 594 F.2d 146, 150 (5th Cir.1979). Rule 56 imposes a heavy burden on a party moving for summary judgment, but once the movant carries its initial burden, the opposing party must demonstrate, through "such facts as would be admissible in evidence," Fed.R.Civ.P. 56(e), that there is a genuine issue as to some material fact. This means that the party opposing the motion must proffer "sufficient evidence ... to require a judge or jury to resolve the parties' differing version of the truth at trial." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

### IV.

This case involves numerous defendants (see *supra* note 1). Five different motions for summary judgment were filed in the district court: one on behalf of Townes Pressler and ROPO; one on behalf of John Holmes; one on behalf of Harris County; one on behalf of Lieutenant Webber; and one on behalf of the City of Houston, Mayor Whitmire, Chief Brown, former Chief Johnson, Assistant Chief Mitchell, Deputy Chief Storemski, and Captain Schumann.[7] Thomas filed a single, rather short, response to these various motions. Attached to the response were only three pages from

6. Thomas also argues in his brief before this court that he need not exhaust his administrative remedies before bringing a § 1983 action. *See Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). The City of Houston suggests that where an adequate administrative remedial system exists to redress an alleged deprivation of first amendment rights, a plaintiff must initially resort to that system. *See Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). Of course, *Bush* did not involve a § 1983 cause

of action. Moreover, although the district court raised the possibility of administrative remedies, it did not decide whether, in this context, Thomas must resort to them. Accordingly, the issue of exhaustion is not properly before us.

7. Former Deputy Chief Bankston (see *supra* note 1) was apparently never served with process. He has appeared neither before this court nor before the court below.

Thomas' deposition.[8] Several of the defendants did attach to their motions for summary judgment substantial portions of Thomas' deposition, with the most significant excerpts being attached to defendant Webber's motion.[9] After carefully reviewing all of the deposition testimony which the district court had before it, we conclude that Thomas' response to the various motions does not demonstrate the existence of any genuine issue of material fact with respect to Harris County, or John Holmes, but that summary judgment was inappropriate with respect to the remaining defendants.

■ With respect to defendants Holmes and Harris County, Thomas' complaint alleges no specific wrongdoing on the part of the County except insofar as Holmes is the district attorney for Harris County. Thomas asserts that Holmes conspired with Pressler and members of ROPO by "accept[ing] the unsubstantiated allegations of ROPO at face value and then present[ing] these allegations to a grand jury." Thomas' brief at 17. Thomas points to a single episode as supposedly exhibiting this conspiracy: a meeting between Holmes and the members of ROPO which purportedly took place several days before the grand jury returned a no-bill against the security officer whom Thomas had arrested. However, the deposition testimony on file clearly indicates that no such meeting ever occurred. Both Holmes and Pressler specifically denied that such a meeting had taken place. There are no countering affidavits in support of Thomas' assertion concerning this event about which he has no "personal knowledge." Fed.R.Civ.P. 56(e). Furthermore, absent

any conspiracy, Holmes is absolutely immune from § 1983 liability for any actions he carried out in his role as prosecutor. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). And despite Thomas' assertion that Holmes "left his prosecutor's role behind" when he personally presented the case to the grand jury, we have previously explained that the decision whether or not to prosecute lies at the core of the prosecutorial function. *McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir.1984). The district court's decision granting summary judgment for Harris County and John Holmes was therefore correct.

■ Thomas' complaint against ROPO and Pressler insists that members of ROPO, angry at Thomas for having arrested one of their private security guards, phoned Holmes, Harris County Constable Walter Rankin, and City of Houston Mayor Kathy Whitmire to plead their case against Thomas. In addition, ROPO filed a complaint concerning Thomas with the IAD, the resolution of which, claims Thomas, "leaves room for doubt as to the propriety of Officer Thomas' actions." Thomas' brief at 16. Thomas then concludes that "[t]hese specific acts provide the skeleton of a conspiracy to silence Officer Thomas' criticism." *Id.* In effect, Thomas asserts that the IAD complaint was filed as part of a design between ROPO and the Houston Police Department to have Thomas removed from the River Oaks patrol. Presumably, ROPO, Pressler, and the named Police Department and municipal officials conspired to remove Thomas because of his persistence in criticizing the favored treatment afforded the River Oaks subdivision.

8. Actually, Thomas' final response to the motions for summary judgment had *no* deposition testimony attached to it. Th.. three pages were attached to an answer to an earlier motion for summary judgment made by fewer than all of the parties. In reviewing the propriety of the district court's decision, we have examined each of Thomas' responses to the various motions for summary judgment.

9. Although Thomas' response to the motions for summary judgment does refer to his own deposition, it often does so without referring to specific pages; in addition, it also refers at times to specific pages which are not in the record; finally, even when the pages alluded to by Thomas are a part of the record, they can be located only by flipping through the portions of the deposition attached to Webber's motion for summary judgment. Counsel would be well-advised to include in his own answer to a motion for summary judgment those portions of the deposition to which that answer makes reference.

So read, Thomas' complaint turns on disputed issues of fact, the resolution of which by summary judgment was improper.

■ In addition, there is a question as to whether Thomas was in fact punitively transferred. Thomas' deposition reveals, through passages attached to Webber's motion for summary judgment, that, according to Thomas, Webber threatened to transfer him immediately on September 10, the day after Thomas arrested the private security guard. Webber denies having so threatened Thomas. Thomas was not in fact transferred until September 16, one day after ROPO filed a formal complaint with the IAD. Thomas' sworn allegations, coupled with this sequence of events, reveal a question of material fact as to whether a retaliatory transfer took place, as well as whether there was a conspiracy between ROPO and the named Houston Police Department and municipal officials to punish Thomas for having engaged in protected first amendment activity. With respect to those defendants, therefore, resolution of Thomas' complaint on a motion for summary judgment was improper.

■ We intimate no view on the merits of whether Thomas' engaging in protected first amendment activity in fact resulted in his being punitively transferred. We do note, however, that at least some of the activity in which Thomas engaged is protected by the first amendment.[10] Specifically, Thomas' criticism of what he perceived to be special treatment afforded the River Oaks subdivision (and its private security force) addressed matters of public rather than purely private concern. *Cf. Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).[11] Thomas' remarks were not merely "criticism directed at ... public official[s]," *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1983), nor did they constitute nothing more than complaints over internal police department affairs. Thomas asserted, in effect, that a particular segment of the community is singled out for special treatment, and his outspokenness reflected a view that this favoritism is unfair. "[W]e believe it apparent that the issue of whether" one segment of the community is receiving favored treatment from the police "is a matter of interest to the community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal." *Connick,* 103 S.Ct. at 1691.[12] Since Thomas' speech touched on matters of public concern, the district court must determine whether Thomas' participation in protected first amendment activity prompted his superiors to retaliate against him, and whether the transfer exhibited such retaliation or punishment.

### V.

■ Defendant Holmes has requested attorney's fees under 42 U.S.C. § 1988

---

10. Thomas' complaint and brief before this court point to numerous examples of what he describes as protected first amendment activity, going back almost ten years. Thomas fails to state for us, however, which particular activity presumably prompted the allegedly punitive transfer. Thomas' complaint appears to be that his continued criticism of the favored treatment given to River Oaks cumuᵗ᭠tively led to his transfer, with the arrest of the private security officer being the straw that broke the camel's back. We believe that this is the most favorable way to view Thomas' allegations, and our discussion of his protected first amendment activity refers to this criticism.

11. Whether Thomas' speech addressed a matter of public concern is determined by looking to the content, form, and context of his statements.

*Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Because of the procedural posture of this case, there is not a sufficiently developed record to permit us to say specifically which of Thomas' statements is entitled to first amendment protection; however, the general substance of Thomas' speech exhibits a matter of public importance. In addition, "[t]he inquiry into the protected status of speech is one of law, not fact." *Connick,* 103 S.Ct. at 1690 n. 7.

12. In addition, retaliation need not take the form of actual dismissal but may also be manifested by certain transfers. This is so even though the public employee does not have the right not to be transferred. *Mt. Healthy,* 429 U.S. at 283–84, 97 S.Ct. at 574–75.

which authorizes the court to award fees to the prevailing defendant if the plaintiff's claim is frivolous or if the plaintiff continues to litigate after it clearly becomes so. *See Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 423, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978); *Lopez v. Aransas County Independent School District,* 570 F.2d 541, 545 (5th Cir.1978). Although we affirm the district court's granting of summary judgment with respect to Holmes, we also agree with the district court that Thomas' claim was not filed frivolously, and we do not believe that this appeal is frivolous. Accordingly, the request for attorney's fees is denied, and the judgment is AFFIRMED in part, REVERSED in part, and REMANDED.